352 P.3d 936

**CITY OF SCOTTSDALE, an Arizona municipal corporation, Plaintiff/Appellant,**

v.

**STATE of Arizona, Defendant/Appellee,**

**Jim Torgeson and Sign King LLC, Intervenor–Defendants/Appellees.**

**No. 1 CA–CV 14–0798.**

Court of Appeals of Arizona, Division 1.

June 30, 2015.

Scottsdale City Attorney's Office By Robert B. Washburn, Lori S. Davis, Scottsdale, Counsel for Plaintiff/Appellant.

Arizona Attorney General's Office By David D. Weinzweig, Robert L. Ellman, Phoenix, Counsel for Defendant/Appellee.

Goldwater Institute By Clint Bolick, Kurt M. Altman, Jared Blanchard, Phoenix, Counsel for Intervenor–Defendants/Appellees.

Judge KENT E. CATTANI delivered the opinion of the Court, in which Presiding Judge PATRICIA K. NORRIS and Judge PATRICIA A. OROZCO joined.

## OPINION

CATTANI, Judge:

¶ 1 The City of Scottsdale appeals the superior court's ruling that a state statute preempts a city ordinance imposing sanctions for sign walkers who conduct business on public thoroughfares, including sidewalks. For reasons that follow, we conclude that the state statute regulates a matter of statewide interest and preempts the municipal ordinance notwithstanding the City's right—as a charter city under Article 13, Section 2, of the Arizona Constitution—to regulate matters of local concern. Accordingly, we affirm the superior court's grant of summary judgment against the City.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Arizona Revised Statutes ("A.R.S.") § 9–499.13, as amended in 2014,[1] prohibits outright municipal bans on sign walkers, *i.e.*, persons who wear, hold, or balance a sign:

A. ... [A]s a matter of statewide concern, all municipalities shall allow the posting, display and use of sign walkers. Except as provided by subsection B of this section, municipalities may adopt reasonable time, place and manner regulations relating to sign walkers.

B. A municipality that adopts reasonable time, place and manner regulations relating to sign walkers may not restrict a sign

---

1. Absent material revisions after the relevant date, we cite a statute's current version.

walker from using a public sidewalk, walkway or pedestrian thoroughfare.

C. This section may be enforced in a private civil action and relief, including an injunction, may be awarded against a municipality. The court shall award reasonable attorney fees to a party that prevails in an action against a municipality for a violation of this section.

D. For the purposes of this section, "sign walker" means a person who wears, holds or balances a sign.

¶ 3 Scottsdale Revised Code ("S.R.C.") § 16–353(c), which was enacted prior to A.R.S. § 9–499.13, imposes a ban on sign walkers:

No person shall have, bear, wear or carry upon any street, any advertising banner, flag, board, sign, transparency, wearing apparel or other device advertising, publicly announcing or calling attention to any goods, wares, merchandise, or commodities, or to any place of business, occupation, show, exhibition, event or entertainment. The provisions of this subsection do not apply to the wearing of apparel without remuneration for doing so or business identification on wearing apparel.

S.R.C. § 16–351 defines "street" to include "all that area dedicated to public use for public street purposes and includes roadways, parkways, alleys and sidewalks."

¶ 4 In May 2014, the City filed a declaratory judgment action seeking to clarify the validity of the local ordinance. The City argued that because it is a charter community under the Arizona Constitution, the State is precluded from interfering with the City's right to control local matters, including the regulation of its sidewalks, the safety of city inhabitants, and municipal aesthetics.

¶ 5 Sign King LLC and its owner, Jim Torgeson, (collectively, "Sign King") moved to intervene, asserting that the Scottsdale ordinance infringes on their free speech rights under the First Amendment; Article 2, Section 6, of the Arizona Constitution; and A.R.S. § 9–499.13.[2] The superior court granted the motion to intervene, and the City and

the State (joined by Sign King) subsequently filed motions for summary judgment.

¶ 6 Following briefing and oral argument, the superior court granted the State's motion, finding that "the state has demonstrated a matter of sufficient statewide concern and a desire to preempt the 'sign spinner' field." The court further found that "the valid local municipal interests of regulating a city's own sidewalks, aesthetics, and safety are not purely local matters to which the city has a sovereign right to regulate in a manner inconsistent with the state law."

¶ 7 The City timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) and –2101(A)(1).

## DISCUSSION

¶ 8 The City argues that the superior court erred by holding that A.R.S. § 9–499.13 preempts S.R.C. § 16–353(c). As it did below, the City asserts that its municipal ordinance regulates an issue of local concern and is valid under the City's charter community authority.

### I. Standard of Review.

¶ 9 We review de novo a decision granting summary judgment, and we will affirm if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11, 263 P.3d 77, 79 (App.2011). We also review de novo the superior court's resolution of issues of statutory interpretation, including whether a state statute preempts a city ordinance. *Korwin v. Cotton*, 234 Ariz. 549, 554, ¶ 8, 323 P.3d 1200, 1205 (App.2014); *City of Tucson v. Rineer*, 193 Ariz. 160, 162, ¶ 2, 971 P.2d 207, 209 (App.1998).

### II. Governing Principles.

#### A. Preemption.

¶ 10 When an issue affects both state and local interests, a municipality may

---

2. Prior to the initial enactment of § 9–499.13 in 2008, Sign King was cited for violating the ordi-

nance and unsuccessfully challenged the ordinance on federal constitutional grounds.

address the issue by enacting and enforcing relevant laws unless specifically preempted by state law. *Coconino County v. Antco, Inc.,* 214 Ariz. 82, 90, ¶ 24, 148 P.3d 1155, 1163 (App.2006). A municipal ordinance is preempted by state law when: "(1) the municipality creates a law in conflict with the state law, (2) the state law is of statewide concern, and (3) the state legislature intended to appropriate the field through a clear preemption policy." *State v. Coles,* 234 Ariz. 573, 574, ¶ 6, 324 P.3d 859, 860 (App.2014).

¶ 11 The City acknowledges that its sign walker ordinance conflicts with A.R.S. § 9–499.13, and the City does not dispute that the Arizona Legislature intended to appropriate the field relating to the regulation of sign walkers on public sidewalks. The City's argument thus focuses on whether the state law addresses a matter of statewide concern (the second prong of the preemption test) and on whether the City's status as a charter city supersedes legislative authority in addressing such matters.

### B. Charter City Authority.

¶ 12 Article 13, Section 2, of the Arizona Constitution provides that cities or towns of at least 3,501 residents may "frame a charter for [their] own government consistent with, and subject to, the Constitution and the laws of the state." Under this authority, charter communities may regulate matters of strictly local concern without state interference or oversight. *City of Scottsdale v. Scottsdale Associated Merchs., Inc.,* 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978). On issues of statewide scope or relevance, however, the Arizona Legislature retains plenary power and charter cities must yield. *See id.* ("Charter cities have certain rights and privileges in local matters to legislate free from interference by the legislature. When the subject of legislation is a matter of statewide concern the Legislature has the power to bind all throughout the state including charter cities.") (citations omitted).

### III. State Preemption of the City's Sign Walker Ban.

¶ 13 The City asserts that its ordinance addresses matters of local concern only and is thus an appropriate exercise of the City's charter community authority. The State counters that the ordinance, like A.R.S. § 9–499.13, addresses matters of statewide concern, namely police powers of the state, zoning and sign regulation, and aesthetics. Intervenors further assert a statewide concern relating to freedom of speech, arguing that the ordinance's outright ban on sign walkers is not a reasonable time, place, or manner regulation on speech.

¶ 14 A.R.S. § 9–499.13(A) evidences the Legislature's view that sign walker advertising is a matter of statewide importance: "[A]s a matter of statewide concern, all municipalities shall allow the posting, display and use of sign walkers." The legislative history of the bill further explains:

The legislature finds, determines and declares that:

1. In a traditional public forum, freedom of speech is a fundamental right that must be protected from unreasonable abridgment by municipal regulation and enforcement.

2. Public sidewalks, walkways and pedestrian thoroughfares within a municipality are traditional forums and have immemorially been held in trust for the use of the public, and time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens and discussing public questions.

3. It is the public policy of this state that equal access to public sidewalks, walkways and pedestrian thoroughfares is fundamental to the exercise of free speech and expression. Notwithstanding reasonable time, place and manner regulations, the use of public sidewalks, walkways and pedestrian thoroughfares must be uniform as between sign walkers and all other individuals.

4. Municipal regulations of time, place and manner that target sign walkers and prevent the equal use of public sidewalks, walkways and pedestrian thoroughfares by sign walkers violate the public policy of this state and are void.

2014 Ariz. Sess. Laws, ch. 97, § 2 (2d Reg. Sess.). Although not controlling in a pre-

emption analysis, such a statement of legislative intent is entitled to deference. *See City of Tucson v. State,* 229 Ariz. 172, 178, ¶ 34, 273 P.3d 624, 630 (2012).

¶ 15 A.R.S. § 9–499.13 applies in all municipalities in Arizona with equal force. It does not prescribe different rules for different places, but instead operates uniformly from community to community. Thus, the statute is a general law that should be applied statewide. *See* 6 McQuillin, *The Law of Municipal Corporations* § 21:30 (3d ed. 2005) ("[O]rdinarily, a general law enacted by the legislature and applicable alike to all cities is paramount and supreme over any conflicting charter provision.").

¶ 16 Relying on *City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon* ("*Arizona ASAE*"), 67 Ariz. 330, 195 P.2d 562 (1948), and *McMann v. City of Tucson,* 202 Ariz. 468, 47 P.3d 672 (App.2002), the City nevertheless asserts that its local ordinance addresses "matters of strictly local municipal concern," and is thus protected from state legislative interference. In *Arizona ASAE,* the Arizona Supreme Court concluded that the sale of municipal real estate is purely a matter of local concern. 67 Ariz. at 336, 195 P.2d at 566. Similarly, in *McMann,* this court held that leasing municipally owned real property (like selling such property) is not a matter of statewide concern. 202 Ariz. at 472, ¶ 10, 47 P.3d at 676. But selling and leasing property owned by a municipality do not implicate the police powers of the state and differ significantly from regulating public activity and criminalizing conduct occurring on public property. There is no general statewide interest in how a sale or lease of municipal real estate is carried out because only those who live in the municipality and who have a financial interest in how the municipality is operated are affected by the sale/lease. In contrast, criminalizing conduct (with its attendant consequences) based on public activity on publicly owned walkways affects everyone who uses the walkway, regardless whether they are residents of the municipality.

¶ 17 Arizona courts have rejected municipal ordinances that conflict with state statutes in other areas, particularly when such ordinances involve the police powers of the state. For example, in *Coles,* this court concluded that A.R.S. § 36–2031, which expressly prohibits local governments from criminalizing public drunkenness, preempted Scottsdale City Code § 19–8(a), which criminalized public drunkenness. 234 Ariz. at 575, 577, ¶¶ 8–9, 17, 324 P.3d at 861, 863. This court held that the adoption of the state statute "signaled the Legislature's determination that alcoholism should be treated as a disease and not criminalized unless a person under the influence of alcohol engages in specified activities such as driving or operating other types of vehicles or equipment," and that in prohibiting criminal sanctions for certain conduct, the Legislature had addressed an issue of statewide importance. *Id.* at 577, ¶ 17, 324 P.3d at 863; *see also State ex rel. Baumert v. Municipal Court,* 124 Ariz. 159, 160–61, 602 P.2d 827, 828–29 (App.1979) (invalidating city ordinance criminalizing indecent exposure based on a definition that differed from state statutory definition of indecent exposure).

¶ 18 The City acknowledges our holding in *Coles,* but argues that it is distinguishable on the basis that "[n]o argument was made or decided regarding whether public intoxication was a purely local concern governed by charter sovereignty." But charter sovereignty, by its own terms under the Arizona Constitution, requires that a charter be "consistent with, and subject to, . . . the laws of the state." Ariz. Const. art. 13, § 2. Thus, charter sovereignty does not exempt a municipality from complying with a state law that addresses an issue of statewide concern. *See Strode v. Sullivan,* 72 Ariz. 360, 364, 236 P.2d 48, 51 (1951) ("This provision conferring upon a qualified city power to frame a charter for its own government is not an enabling act conferring carte blanche authority or plenary power to adopt any legislation that it might desire.").

¶ 19 Courts have similarly rejected municipal ordinances that conflict with state provisions in areas that do not involve criminal sanctions. For example, in *Levitz v. State,* 126 Ariz. 203, 204–05, 613 P.2d 1259, 1260–61 (1980), the Arizona Supreme Court held that

the regulation of advertising signs is not purely a local matter and that a charter city's advertising sign regulation is not exempt from State regulation requirements. *See also Scottsdale Associated Merchs.,* 120 Ariz. at 5, 583 P.2d at 892 (invalidating a Scottsdale ordinance that conflicted with Arizona law on a sign-regulation issue).

¶ 20 The City argues that *Levitz* and the zoning cases on which it relied, *see* 126 Ariz. at 204–05, 613 P.2d at 1260–61, are distinguishable because of the nature of zoning ordinances regulating the size and location of signs. But if ordinances regulating sign location and size are subject to a preemption analysis, it follows that ordinances prohibiting entirely a category of signs, albeit mobile, are also subject to a preemption analysis.

■ ¶ 21 The City further argues that the ordinance should be upheld because it does not violate the First Amendment. But even assuming arguendo that the ordinance would otherwise be a valid speech restriction, the First Amendment does not bar legislative action providing greater protections of speech than required under either the federal or state constitutions. *See Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n,* 160 Ariz. 350, 354, 773 P.2d 455, 459 (1989) (noting that the First Amendment to the United States Constitution provides only a protection against government action that *restricts* speech and does not prevent a state from granting to its citizens greater protections than are required under the federal constitution).

¶ 22 Finally, although the City argues that the state statute prevents reasonable time, place, and manner restrictions on sign walkers, we find no such prohibition; to the contrary, the statute expressly allows reasonable time, place, and manner regulations. *See* A.R.S. § 9–499.13(A) ("Except as provided by subsection B of this section, municipalities may adopt reasonable time, place and manner regulations relating to sign walkers."). The state statute simply prohibits outright bans on sign walkers and requires that rules regulating conduct on public thoroughfares be uniform as between sign walkers and all other individuals. *See* A.R.S. § 9–499.13(B) ("A municipality that adopts reasonable time,

place and manner regulations relating to sign walkers *may not restrict a sign walker from using* a public sidewalk, walkway or pedestrian thoroughfare.") (emphasis added).

## CONCLUSION

¶ 23 A.R.S. § 9–499.13 preempts local ordinances that impose a blanket prohibition on sign walkers conducting business on public sidewalks and thoroughfares. Accordingly, we affirm the superior court's order granting the State's motion for summary judgment.